# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**
-------------------------------------------------------------------------X
**VALERIE HALSEY As Proposed Administratrix of the**
**Estate of DOROTHY OSBORNE, deceased,**

                              **Plaintiff,**

                **-against-**

**THROGS NECK OPERATING, LLC d/b/a THROGS**
**NECK REHABILITATION & NURSING CENTER**

                            **Defendant.**
-------------------------------------------------------------------------X

Index No.:
Filed:

**SUMMONS**

Plaintiff designates
Bronx County as the place of
trial based on Plaintiff's
residence

**To the above-named Defendant:**

      **You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorney(s) within twenty days after the services of this summons exclusive of the day of service, where service is made by delivery upon you personally within the state, or within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

*The relief sought is **monetary damages***

      *Upon your failure to appear judgment will be taken against you by default in such a sum as a jury would find fair, adequate and just.*

Dated: Uniondale, New York
       May 26, 2022

                               **DUFFY & DUFFY, PLLC**
                               *Attorneys for Plaintiff*
                               1370 RXR Plaza
                               Uniondale, New York 11556

                               BY:_____
                                  MICHAEL E. DUFFY, ESQ.

pg. 1

TO:


**THROGS NECK REHABILITATION & NURSING CENTER**
707 Throgs Neck Expressway
Bronx, NY 10465
And at
c/o Secretary of State
41 State Street
Albany, NY 12231

**THROGS NECK OPERATING, LLC**
707 Throgs Neck Expressway
Bronx, NY 10465
And at
1463 66th Street
Brooklyn, NY 11219
And at
c/o Secretary of State
41 State Street
Albany, NY 12231

Case 1:22-cv-07664-VSB   Document 1-1   Filed 09/08/22   Page 4 of 29

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
----------------------------------------------------------------------X
VALERIE HALSEY As Proposed Administratrix of the
Estate of DOROTHY OSBORNE, deceased,

                          **Plaintiff,**

                  -

**against-**

THROGS NECK OPERATING, LLC d/b/a THROGS
NECK REHABILITATION & NURSING CENTER

                    **Defendant.**
----------------------------------------------------------------------X

**VERIFIED COMPLAINT**

Index No.:
Filed:

      Plaintiffs, by their attorneys, **DUFFY & DUFFY, PLLC**, complaining of Defendant,

allege as follows:

## NATURE OF THE ACTION

1.     Plaintiff, **VALERIE HALSEY, as Proposed Administrator of the Estate

of DOROTHY OSBORNE, deceased**, brings this action against **THROGS NECK

OPERATING, LLC d/b/a THROGS NECK REHABILITATION & NURSING CENTER**

("Defendant"), a nursing home located at 707 Throgs Neck Expressway, Bronx, NY 10465 (the

"Facility"), on behalf of plaintiff-decedent, **DOROTHY OSBORNE**, who was victimized by

unsafe and inadequate care in the Facility. Defendant's unlawful conduct violated Sections 2801-

d and 2803 of New York's Public Health Law ("PHL"), as well as various state and federal

regulations and statutes that set minimum practice standards for nursing homes in New York.

Severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) is known and documented to

cause a debilitating and deadly disease, the Coronavirus Disease 2019 ("COVID-19").

2.     Defendant was entrusted to provide care to the elderly and infirm nursing home

residents in its custody. Unfortunately, Defendant betrayed and continues to betray that trust.

Case 1:22-cv-07664-VSB   Document 1-1   Filed 09/08/22   Page 5 of 29

Defendant willfully and recklessly failed to take proper precautions to prevent the spread of infections prior to and during the COVID-19 pandemic. As a direct and foreseeable consequence of Defendant's failures, as of May 24, 2022, there were a minimum of eight (8) confirmed and thirty-six (36) presumed COVID-related deaths at **THROGS NECK REHABILITATION & NURSING CENTER**[1], as well as one (1) resident death outside of the facility caused by COVID-19 contracted within **THROGS NECK REHABILITATION & NURSING CENTER**.

3.      Moreover, upon information and belief, Defendant, **THROGS NECK REHABILITATION & NURSING CENTER**, intentionally misrepresented the number of infected residents and number of deaths cause by COVID-19.

4.      **THROGS NECK REHABILITATION & NURSING CENTER** deprived its residents, including Plaintiff-decedent, of their rights in violation of the following statutes:

> 42 CFR §483.80 Infection Control: The facility must establish and maintain an infection prevention and control program designed to provide a safe, sanitary and comfortable environment and to help prevent the development and transmission of communicable diseases and infections.
>
> §483.80(a) Infection prevention and control program. The facility must establish an infection prevention and control program (IPCP) that must include, at a minimum, the following elements:
>
> > §483.80(a)(1) A system for preventing, identifying, reporting, investigating, and controlling infections and communicable diseases for all residents, staff, volunteers, visitors, and other individuals providing services under a contractual arrangement based upon the facility assessment conducted according to §483.70(e) and following accepted national standards;
> >
> > §483.80(a)(2) Written standards, policies, and procedures for the program, which must include, but are not limited to:
> >
> > > (i)      A system of surveillance designed to identify possible communicable diseases or infections before they can spread to other persons in the facility;
> > >
> > > (ii)     When and to whom possible incidents of communicable disease

---

[1] https://www.health.ny.gov/statistics/diseases/covid-19/fatalities_nursing_home_acf.pdf

FILED: BRONX COUNTY CLERK 05/26/2022 09:53 AM

Case 1:22-cv-07664-VSB   Document 1-1   Filed 09/08/22   Page 6 of 29

or infections should be reported;

(iii)    Standard and transmission-based precautions to be followed to prevent spread of infections;

(iv)    When and how isolation should be used for a resident; including but not limited to:

(A) The type and duration of the isolation, depending upon the infectious agent or organism involved, and

(B) A requirement that the isolation should be the least restrictive possible for the resident under the circumstances.

(v)    The circumstances under which the facility must prohibit employees with a communicable disease or infected skin lesions from direct contact with residents or their food, if direct contact will transmit the disease; and

(vi)    The hand hygiene procedures to be followed by staff involved in direct resident contact.

§483.80(a)(4) A system for recording incidents identified under the facility's IPCP and the corrective actions taken by the facility.

§483.80(e) Linens. Personnel must handle, store, process, and transport linens so as to prevent the spread of infection.

§483.80(f) Annual review. The facility will conduct an annual review of its IPCP and update their program, as necessary.

5.      Accordingly, Plaintiffs, assert a cause of action against Defendant for violation of PHL § 2801-d and seek monetary damages in an amount to be determined at trial, statutory damages in accordance with PHL § 2801-d(2), wrongful death damages, as well as any other available relief at law or in equity.

## **PARTIES**

6.      Plaintiff, **VALERIE HALSEY**, sues on behalf of her mother, **DOROTHY OSBORNE**, who was a resident of the Facility from on or about May 26, 2019, to the date of her death, June 3, 2020.

7.      **VALERIE HALSEY** is a resident of Bronx County, New York.

8.      On June 3, 2020, Plaintiff-decedent, **DOROTHY OSBORNE**, died.

pg. 5

9. That a petition to appoint **VALERIE HALSEY** as Administrator of the Estate of **DOROTHY OSBORNE** is pending in the Surrogate's Court of Bronx County.

10. At all times herein mentioned, Defendant, **THROGS NECK REHABILITATION & NURSING CENTER**, was and still is a Domestic Proprietary Business Corporation (for profit) duly organized and existing under and by virtue of the laws of the State of New York.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over all causes of action asserted herein. Defendant is subject to the personal jurisdiction of this Court pursuant to CPLR 301.

12. Defendant has conducted and does conduct business in the State of New York, including the operation of the Facility.

13. Venue is proper in this County pursuant to CPLR 503(b) because Plaintiff-decedent resided in this County.

14. Venue is also proper in this County pursuant to CPLR 503(c) as **THROGS NECK REHABILITATION & NURSING CENTER**'s principal place of business is 707 Throgs Neck Expressway, Bronx, NY 10465.

## FACTUAL BACKGROUND

15. In an effort to protect the vulnerable nursing home population, ensure that their rights are enforced, and provide them with a form of legal recourse which would not otherwise be economically feasible, the New York State Legislature enacted PHL §§ 2801-d and 2803-c.

16. Predating the enactment of PHL §§ 2801-d and 2803-c, "the public's confidence in the State's ability to protect its most defenseless citizens, the aged and infirm, had been destroyed by a series of dramatic disclosures highlighting the abuses of nursing home care in their State." *See*

Governor's Memoranda, Nursing Home Operations, McKinney's 1975 Session Laws of New York, p.1764.  In Governor Carey's letter to the Legislature accompanying the bills for PHL §§ 2801-d and 2803-c, he stated that these bills were "designed to deal directly with the most serious immediate problems which have been uncovered with respect to the nursing home industry."[2]  The Sponsor's Memorandum relating to PHL § 2803-c and the transcripts of the Senate debates indicate that the purpose of the statute was to establish certain minimum standards for the care of nursing home Residents.  *See* Governor's Bill Jacket for Chapter 648 of the Laws of 1975; Senate Debate Transcripts, 1975, Chapter 648 Transcripts, pp.4521, 4525.  The term "residential health care facility" was intentionally used by the Legislature in an effort to curb abuses in the nursing home industry.[3]

17.     The Commission's Summary Report specifically indicated that PHL § 2801-d creates a cause of action for a patient of a facility which deprived the patient "of rights or benefits created for her well-being by federal or state law or pursuant to contract" which resulted in injury to the patient. The Commission stated that this statute "introduce[s] a degree of equality between nursing homes and their otherwise vulnerable and helpless residents and, through private litigation brought by residents, provides a supplemental mechanism for the enforcement of existing standards of care."

18.     The Legislative Memorandum "Nursing Home–Health Care Facilities–Actions by Residents" relating to PHL § 2801-d observes that nursing home residents "are largely helpless and isolated," that many are "without occasional visitors," and that "[m]ost cannot afford attorneys," and therefore the bill provides nursing home residents "with increased powers to enforce their rights to adequate treatment and care by providing them with a private right of action to sue for damages and other relief and enabling them to bring such suits as class actions."  *See* McKinney's Session Laws of New York, 1975 pp.1685-86.  That memorandum states that the proposed PHL § 2801-d "creates

---

[2] See Morisett v. Terence Cardinal Cooke Health Care Ctr., 8 Misc.3d 506, 509 (Sup. Ct. N.Y. Cnty.2005).
[3] See Town of Massen v. Whalen, 72 A.D.2d 838 (3rd Dep't 1979).

incentives which would encourage private non-governmental parties (*i.e.*, plaintiffs' attorneys) to help protect the rights of nursing home Residents." *Id.*

19.     This action seeks to address the injustices that caused the Legislature to enact PHL § 2801-d.  As alleged in more detail below, Defendant have violated and continue to violate their statutory obligations by failing to provide, among other things, adequate infection control, supervision, treatment, dignity, hygiene, and medical attention.

## STATEMENT OF FACTS

20.     Severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) is known and documented to cause a debilitating and deadly disease, the Coronavirus Disease 2019 ("COVID-19").

21.     COVID-19 (also commonly referred to as "coronavirus") can and has spread rapidly in long-term residential care facilities and persons with chronic underlying medical conditions are at greater risk for COVID-19.

22.     This action is commenced due to Defendant's gross negligence and reckless misconduct in failing to create, maintain and implement a system for preventing, identifying, reporting, investigating, and controlling infections and communicable diseases for all residents, staff, volunteers, visitors, and other individuals, and Defendant's failure to adequately care for and protect its elderly and vulnerable residents, which caused the death of the decedent, **DOROTHY OSBORNE**, and at least forty-four (44) other residents from COVID-19 infections.

23.     In 2016, The Centers for Medicare and Medicaid Services (CMS) added new regulations which should have resulted in robust emergency preparedness and infection control programs at New York nursing homes (The Emergency Preparedness Final Rule, 82 Fed. Reg. 63860, September 16, 2016, referred to as the 2016 "Final Rule").

24.    The Final Rule required **THROGS NECK REHABILITATION & NURSING CENTER** to create and implement a comprehensive emergency preparedness program by November 2017.

25.    The Final Rule required **THROGS NECK REHABILITATION & NURSING CENTER** to create and implement the infection control regulations by November 28, 2019.

26.    42 CFR § 483.70(e) requires that **THROGS NECK REHABILITATION & NURSING CENTER** conduct a facility wide assessment "to determine what resources are necessary to care for its residents competently during both day-to-day operations and emergencies."

27.    New York State law, 10 NYCRR 415.19 - "Infection Control", requires that **THROGS NECK REHABILITATION & NURSING CENTER**" maintain an infection control program designed to provide a safe, sanitary, and comfortable environment in which residents reside and to help prevent the development and transmission of disease and infection"; "investigates, controls and takes action to prevent infections in the facility"; and "determines what procedures such as isolation and universal precautions should be utilized for an individual resident and implements the appropriate procedures".

28.    Federal law, including CFR 483.65, further mandates that **THROGS NECK REHABILITATION & NURSING CENTER** maintain an appropriate Infection Prevention and Control Program, properly train its staff, and that the facility maintain and utilize sufficient Personal Protective Equipment ("PPE"), including gloves, gowns and masks.

29.    In or about January 2020, and likely earlier, Defendant was made aware of COVID-19 spreading world-wide and nationally that causes severe medical distress and death in individuals who contracted the disease, especially the elderly.

30.     On February 1, 2019, CMS issued a memorandum specifically requiring **THROGS NECK REHABILITATION & NURSING CENTER** and all other New York nursing homes to include infectious diseases as part of the preparing, planning and training related to the emergency plan.

31.     On February 6, 2020, CMS issued written memoranda to **THROGS NECK REHABILITATION & NURSING CENTER** advising that COVID-19 infections can rapidly appear and spread, and facilities must take steps to prepare for this, including reviewing their infection control policies and practices to prevent the spread of infection. CMS confirmed that nursing homes had prior notice, including from prior recent public health events such as the Ebola virus, 2009 pandemic HlNl influenza, and Zika outbreaks, of the critical need for nursing homes to be prepared by planning for infectious disease response. CMS stated that this includes being prepared with appropriate personal protective equipment (PPE) use and availability, such as gloves, gowns, respirators, and eye protection, and training of staff and employees in infection control.[4]

32.     In addition, prior to the coronavirus emergency in New York, on February 6, 2020, **THROGS NECK REHABILITATION & NURSING CENTER**, was placed on notice by Centers for Medicare & Medicaid Services that coronavirus infections can rapidly appear and spread, and that it was critical that the nursing home be prepared by planning for infectious disease response, including having sufficient PPE available, as well as ensuring appropriate training of its employees and staff regarding PPE use.

33.     The claims against Defendant asserted herein are premised on deprivations of residents' rights afforded pursuant to Public Health Law sec. 2801-d, negligence, gross negligence, and wrongful

---

[4]*Information for Healthcare Facilities Concerning 2019 Novel Coronavirus Illness (2019-nCoV)* https ://www.cms.gov/files/document/gso-20-09-all.pdf

death. Plaintiff seeks recovery of punitive damages from Defendant based upon its grossly negligent and reckless actions in failing to protect residents from harm.

34. Plaintiff-decedent, **DOROTHY OSBORNE**, was admitted to Defendant's facility on or about May 26, 2019.

35. From May 26, 2019 through June 3, 2020, **THROGS NECK REHABILITATION & NURSING CENTER** intentionally and with reckless disregard for the rights and well-being of **DOROTHY OSBORNE**, failed to timely and properly isolate residents known to be infected with COVID-19, failed to properly and timely test residents and staff for COVID-19, failed to appropriately train its staff in the use of PPE and infection control interventions, and failed to ensure staff members exposed to residents infected with COVID-19 did not work with residents not infected with COVID-19.

36. From May 26, 2019, through June 3, 2020, **THROGS NECK REHABILITATION & NURSING CENTER** failed to timely and properly recognize and act upon **DOROTHY OSBORNE's** signs and symptoms of infection from COVID-19, including fever, hypertension, tachypnea, and hypoxia.

37. As a direct result of **THROGS NECK REHABILITATION & NURSING CENTER's** failures, **DOROTHY OSBORNE** was infected with COVID-19, developed respiratory distress, and experienced cardiopulmonary arrest, which resulted in her untimely death on June 3, 2020.

38. Prior to the arrival of COVID-19, **THROGS NECK REHABILITATION & NURSING CENTER** failed to provide proper infection prevention and control procedures, and despite being armed with knowledge of prior public health infection events, failed to take steps to prepare to prevent the spread of future infections.

39.     Despite the notice provided by CMS, the CDC, its own prior failures, and the media, **THROGS NECK REHABILITATION & NURSING CENTER**, continued its pattern of reckless and grossly negligence infection control failures at the Facility throughout the COVID-19 time period by co-mingling residents infected with and/or showing signs and symptoms of COVID-19 with residents who were not infected with the virus; failing to properly and timely test residents and staff for COVID-19, failing to appropriately train its staff in the use of PPE and infection control interventions, and failing to ensure staff members exposed to residents infected with COVID-19 did not work with residents not infected with COVID-19.

40.     As a direct and foreseeable consequence of such failures, Plaintiff, **DOROTHY OSBORNE** sustained loss, damages, injury and death, and survivors of residents similarly situated also suffered loss and damages as a direct consequence of the same.

41.     As set forth below, the claims asserted herein are premised on violations of residents' rights laws pursuant to Public Health Law sec. 2801-d, negligence and gross negligence, and wrongful death. Plaintiff also seeks recovery for punitive damages from Defendant based upon the aforementioned causes of action, and conduct that was grossly reckless, willful, and wanton.

### The Facility Is Unsafe and The Conditions To Which Its Residents Are Subjected Violate Numerous Statutes.

42.     Conditions at the Facility were unsafe and violative of applicable laws, rules, and regulations, and the care provided to plaintiff-decedent, **DOROTHY OSBORNE** was inadequate.

43.     Defendant failed to promote the care for its residents in a manner that maintains or enhances each resident's dignity and respect in full recognition of their individuality and in contravention of applicable federal and New York State laws, rules, and regulations.

44.     Among other failures, Defendant failed and continue to fail to provide sufficient infection control policies to provide the nursing and related services necessary to attain and maintain an effective

infection control program.  A resident's right to an effective infection control program is one of the most important rights protected by the New York and federal statutes.

45.    Defendant subjected plaintiff-decedent, **DOROTHY OSBORNE,** to indignities and other harms that were the direct result of inadequate infection control protocols at the Facility, including but not limited to: infrequent and inadequate turning and repositioning; no response or long response times to call lights; failing to provide adequate showers; lack of assistance with grooming and bathing; inadequate attention to toileting needs, resulting in plaintiff-decedent, **DOROTHY OSBORNE** remaining in her own urine and fecal matter for extended periods of time; lack of assistance with eating; failure to provide fluids as needed; lack of assistance with dressing; and being confined to their beds without removal for long periods.  Indeed, plaintiff-decedent, **DOROTHY OSBORNE** and her family have suffered due to the Facility's failure to communicate effectively with its residents and families, even in some instances, failing to communicate their loved ones were infected or showing signs or symptoms of COVID-19.

46.    As a result of Defendant's inadequate care, **DOROTHY OSBORNE** sustained personal injuries and endured conscious pain and suffering.

47.    Defendant' failure to satisfy its obligations pursuant to federal and New York law, particularly the obligation to provide an effective infection control program, economically injured plaintiff-decedent, **DOROTHY OSBORNE** by depriving her of the benefit of the services for which she paid Defendant, namely, nursing home services with, at the least, an infection control program to satisfy the minimum requirements of New York and federal law.

### FIRST CAUSE OF ACTION PUBLIC HEALTH LAW § 2801-d

48.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained above with the same force and effect as if the same were set forth at full length herein.

pg. 13

49.     At all relevant times, Defendant conducted business as a licensed nursing home as defined under PHL § 2801(2).

50.      At all relevant times, Defendant had possession and control of the Facility's building(s), the nursing home located at 707 Throgs Neck Expressway, Bronx, NY 10465.

51.     The Facility provides nursing care to sick, invalid, infirmed, disabled, or convalescent persons in addition to lodging and board or health related services pursuant to PHL § 2801(2).

52.     The Facility is a "residential health care facility" as defined in PHL § 2801(3).

53.     Defendant is subject to the provisions of PHL §§ 2801-d and 2803-c, as well as the rules and regulations set forth in sections 31.19(a) and 16.19(a) of the New York Mental Hygiene Law, section 415 of the New York Code Rules and Regulations, and the federal Nursing Home Reform Act (42 U.S.C. §1395 et seq.; 42 C.F.R. Part 483 and 10 N.Y.C.R.R Part 415).  These rules and regulations impose various obligations on Defendant, including, among others, a duty to adequately staff the Facility.

54.     Plaintiff-decedent, **DOROTHY OSBORNE**, entered the Facility for care, treatment, supervision, management, and/or rehabilitation.

55.     Plaintiff-decedent, **DOROTHY OSBORNE** were under the exclusive care, custody, control, treatment, rehabilitation, supervision, and management of Defendant.

56.     During the period of the plaintiff-decedent, **DOROTHY OSBORNE**'s residency in the Facility, **THROGS NECK REHABILITATION & NURSING CENTER**, through its officers, employees, agents, and staff, violated PHL § 2801-d by depriving Plaintiffs of rights or benefits created or established for their well-being by the terms of a contract(s) and/or by the terms of state and federal statutes, rules, and regulations.

57. During plaintiff-decedent, **DOROTHY OSBORNE**'s residency, she sustained personal injuries and suffered mental anguish as a result of Defendant, **THROGS NECK REHABILITATION & NURSING CENTER's** inadequate care.

58. At all times herein mentioned, it was the duty of Defendant, **THROGS NECK REHABILITATION & NURSING CENTER**, its servants, agents, affiliated physicians, attending physicians, physician's assistants, therapists, nurses, aides, attendants, and /or employees to order, direct, conduct, provide and/or ensure suitable, sufficient, adequate and appropriate assessments, directives, protocols and plan of care relative to the testing, evaluation, examination, treatment, referral and management of residents of said residential health care facility, including the Plaintiff-decedent, **DOROTHY OSBORNE**, and all those similarly situated, herein.

59. From May 26, 2019 through June 3, 2020, **THROGS NECK REHABILITATION & NURSING CENTER**, its servants, agents, affiliated physicians, attending physicians, physician's assistants, therapists, nurses, aides, attendants, and /or employees negligently, willfully and in reckless disregard of the lawful rights of the Plaintiff-decedent, failed, neglected, refused and/or omitted to order, direct  advise, perform, render, provide or ensure suitable, decent, adequate and appropriate nursing care, nutrition, supervision, aid, assistance, tests, treatments, procedures, protocols, evaluations, consultations, safeguarding, protection and services for and to the Plaintiff-decedent, **DOROTHY OSBORNE**, and all those similarly situated, herein.

60. At all times herein mentioned, during Plaintiff-decedent, **DOROTHY OSBORNE's** stay at Defendant, **THROGS NECK REHABILITATION & NURSING CENTER's** residential healthcare facility, he and those similarly situated contracted COVID-19, and suffered respiratory distress, hypoxia, and other injuries, caused by the reckless misconduct and negligence of Defendant, **THROGS NECK REHABILITATION & NURSING CENTER** and deprivations of **DOROTHY**

**OSBORNE's** rights as a nursing home resident in violation of Defendant's contract with Plaintiff-decedent, **DOROTHY OSBORNE**, as well as those similarly situated, laws, rules, statutes and ordinances without any negligence on the part of Plaintiff-decedent, **DOROTHY OSBORNE,** and all those similarly situated, herein, which resulted in death.

61.     That at all times hereinafter mentioned, Defendant, **THROGS NECK REHABILITATION & NURSING CENTER**, negligently and recklessly breached their duties owed to Plaintiff-decedent, **DOROTHY OSBORNE**, by depriving Plaintiff of her rights afforded under state and federal regulations including:

> - 42 C.F.R. § 483.10(b)(11)(i)(B) -- resident has right to immediately be informed, for the facility to inform the resident's physician, and/or family member of a significant change in the resident's physical, mental, or psychosocial status (i.e. a deterioration in health, mental, or psychosocial status in either life-threatening conditions or clinical complications).

> - 42 C.F.R. § 483.10(d)(2) -- Be fully informed in advance about care and treatment and of any changes in that care or treatment that may affect the resident's well-being.

> - 10 NYCRR § 415.19 -- Infection control. The facility shall establish and maintain an infection control program designed to provide a safe, sanitary, and comfortable environment in which residents reside and to help prevent the development and transmission of disease and infection.

> (a) Infection control program. The facility must establish an infection control program under which it-- (1) Investigates, controls, and prevents infections in the facility; (2) Decides what procedures, such as isolation, should be applied to an individual resident; and (3) Maintains a record of incidents and corrective actions related to infections….

> (b) Preventing spread of infection. (1) When the infection control program determines that a resident needs isolation to prevent the spread of infection, the facility must isolate the resident. (2) The facility must prohibit employees with a communicable disease or infected skin lesions from direct contact with residents or their food, if direct contact will transmit the disease. (3) The facility must

require staff to wash their hands after each direct resident contact for which handwashing is indicated by accepted professional practice.

(c) Linens.   Personnel must handle, store, process, and transport linens so as to prevent the spread of infection

- 10 NYCRR § 410.2 -- Resident care standards

- 10 NYCRR § 415.3 (a) -- Resident's rights

- 10 NYCRR § 415.3(e) -- Right to clinical care and treatment.

- 10 NYCRR § 415.5 -- Quality of Life

- 10 NYCRR §415.5(h) -- Environment.

- 10 NYCRR §415.11 -- Resident assessment and care planning

- 10 NYCRR §415.11(a)(1) -- Resident assessment and care planning.

- 10 NYCRR §415.11(a)(2) -- Resident assessment and care planning. The comprehensive assessment shall include at least the following information:

- 10 NYCRR §415.11(a)(3) -- Resident assessment and care planning. Frequency.

- 10 NYCRR §415.11(a)(4) -- Resident assessment and care planning. Review of assessments.

- 10 NYCRR §415.11(a)(5) -- Resident assessment and care planning. Use.

- 10 NYCRR §415.11(b)(1)-(4) Resident assessment and care planning. Accuracy of assessments.

- 10 NYCRR §415.11(c)(1)-(3) -- Comprehensive care plans.

- 10 NYCRR §415.12 -- Quality of care.

pg. 17

- 10 NYCRR §415.12(a)(1)—(3) -- (a) Activities of daily living.

- 10 NYCRR §415.12 Quality of care. Each resident shall receive, and the facility shall provide, care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being, in accordance with the individual's assessments and plan of care subject to the resident's right of self-determination.

- 10 NYCRR §415.13 – Staffing. Nursing services.

- 10 NYCRR §415.15 -- Medical services.

- 10 NYCRR §415.22 -- Clinical records.

- 10 NYCRR §415.14 – Dietary services.

- 10 NYCRR §415.12(i) and 42 CFR §483.25(i) – Nutrition: Based on a resident's comprehensive assessment. The facility must ensure that the resident:

(1) Maintains acceptable parameters of nutritional status, such as body weight and protein levels, unless the resident's clinical condition demonstrates that this is not possible; and

(2) Receives a therapeutic diet when there is a nutritional problem.

- 10 NYCRR §415.12(j) and 42 CFR §483.25(j) – Hydration: The facility must provide each resident with sufficient fluid intake to maintain proper hydration and health.

- 42 C.F.R §483.30 – The nursing needs of the resident shall be met 24 hours a day, 7 days a week; and there shall be sufficient staffing to enable the resident to attain or maintain her highest practicable physical well-being.

- 42 C.F.R § 483.80 - The facility must establish and maintain an infection prevention and control program designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of communicable diseases and infections.

- 42 C.F.R § 483.80(b) - The facility must designate one or more individual(s) as the infection preventionist (s) (IPs) who are responsible for the facility's infection prevention and control program ("IPCP").

- 42 C.F.R §483.20 – Care plans shall address the comprehensive needs of the resident. Care plans shall be followed. Care plans shall be revised quarterly as resident needs dictate.

- 42 C.F.R §483.13(c) – All injuries of unknown origin to a resident shall be reported to State authorities.

- 42 C.F.R §483.40 – Physician orders shall be followed.

- 42 C.F.R §483.75(1) – Medical Records:

The facility shall ensure that the resident's medical records be consistent with professional standards. Nursing progress notes shall be sufficient and identify the resident clearly, describe the resident's condition fully and justify treatment and the results of said treatment.

- 42 C.F.R §483.25 – Each resident shall receive, and the facility shall provide, care and services to enable the resident to attain or maintain the highest practicable physical, mental and psychosocial well-being, in accordance with the individual's assessments and care plan.

- 42 C.F.R §483.15 – Each resident shall be treated with dignity.

- 42 C.F.R §483.75 – Facility staff shall be knowledgeable in caring for the aged, frail and disabled. Staff shall be properly trained in accident prevention.

- 42 C.F.R §483.13(c) – Each resident shall be free of abuse and neglect.

- 42 CFR § 483.70 (e) Facility Assessment. This requirement stipulated that facilities must conduct an assessment "to determine what resources are necessary to care for its residents competently during both day to day operations and emergencies."

- 42 CFR § 483.73 Emergency Preparedness.

- 42 C.F.R § 483.95 Training.

62.     As a result of the foregoing acts and/or omissions, plaintiff-decedent **DOROTHY OSBORNE**, was denied her rights under Public Health Law §2803-c and such denial caused her to suffer severe injuries and untimely death.

63.     That at all times hereinafter mentioned, as a result of the foregoing acts and/or omissions, plaintiff-decedent, **DOROTHY OSBORNE**, was subject to Defendant's gross negligence, causing plaintiff-decedent, **DOROTHY OSBORNE**, to be forced to undergo medical treatment, incur medical expenses, disability, pain and suffering, mental anguish, loss of enjoyment of life, loss of dignity and death.

64.     That at all times hereinafter mentioned, as a result of the foregoing, plaintiff-decedent, **DOROTHY OSBORNE**, was damaged in a sum which exceeds the jurisdictional limits of all lower Courts.

65.     During plaintiff-decedent, **DOROTHY OSBORNE**'s residency at the Facility, he was subjected to indignities and other harms that directly resulted and result from inadequate infection control at the Facility, when Defendant: negligently, willfully, wantonly, recklessly and inappropriately: allowed staff members that had tested positive for Covid-19 virus to continue to treat and care for residents; allowed plaintiff-decedent, **DOROTHY OSBORNE** to be exposed to the Covid-19 virus; failed to ensure Defendant had the appropriate space, equipment, and staff to effectively isolate the individuals that tested positive for the virus or were suspected to have been infected by the virus; failed to promulgate appropriate, necessary and proper rules, regulations, by-laws, protocol and guidelines necessary to the functions and activities at nursing home; failed to allocate resources to appropriately prepare, plan and train for viral outbreaks; failed to properly supervise the administrators, staff, personnel, physicians and nurses and all those rendering services

to Plaintiff-decedent and those similarly situated; failed to direct/order nursing home's staff to timely and properly communicate its Covid-19 related rules, policies and procedures with residents and/or residents' families; intentionally misrepresented the number of COVID-19 infections and COVID-19 related deaths; negligently and recklessly gave permission and/or privileges to individuals Defendant knew, or should have known in the reasonable exercise of care and caution, were unfit, inexperienced and incompetent to practice nursing or medicine; failed to have adequate staff and consultants readily available to create, communicate, implement and supervise polices and regulations applicable to the services rendered at Defendant, **THROGS NECK REHABILITATION & NURSING CENTER**, during the Covid-19 state of emergency; failed to transfer residents to open beds in other facilities specifically designated for Covid-19 positive individuals; failed to order or enact a policy, procedure, or regulation whereby nursing home residents diagnosed as Covid-19 positive must be isolated or transferred; and failed to direct nursing home's staff not to admit Covid-19 positive individuals.

66. Plaintiff and her family complained to complain to the Facility's staff regarding the neglectful, improper, and/or inadequate care and treatment of Plaintiff.

67. Plaintiff-decedent **DOROTHY OSBORNE** was caused to be severely injured as a result of the reckless, willful decision-making of administration and ownership, negligence, carelessness and/or statutory violations of the Defendant, **THROGS NECK REHABILITATION & NURSING CENTER**, its agents, servants and/or employees, including their failure to timely and properly provide appropriate personal protective equipment to nursing homes and nursing home staff members; failure to ensure that staff had appropriate levels of personal protective equipment; failure to provide timely and appropriate training to staff regarding infection control and PPE use; failure to timely and properly provide Covid-19 diagnostic and antibody tests; failure to timely and properly test staff members for Covid-19 at appropriate intervals; failure to timely and properly create and

implement appropriate policies, regulations and/or procedures for infection control, communication

with family members and notice of significant changes in resident's conditions; recklessly, negligently

and carelessly caused Plaintiff-decedent to be attended to and cared for by those whom.

68.     That the injuries suffered by plaintiff-decedent, **DOROTHY OSBORNE** was caused

by the reckless disregard and willful lack of reasonable care exercised by the Defendant, in that the

above-mentioned injuries and occurrence(s), and the results thereof, were caused by the gross

negligence of Defendant and/or Defendant's servants, agents, contractors, licensees and/or employees

involved in the ownership, operation, management, supervision, maintenance and control of the

aforesaid facilities, and the grossly negligent care and treatment provided to the Plaintiff; in improperly

training and supervising staff and its residents; and in failing to follow statutory laws, rules, and

regulations thereby resulting in negligence per se and evidence of negligence.

69.     As a result of the foregoing acts and/or omissions, Defendant deprived plaintiff-

decedent, **DOROTHY OSBORNE** of her rights in violation of PHL § 2801-d.

70.     As a result of Defendant' acts and/or omissions, plaintiff-decedent, **DOROTHY**

**OSBORNE**, has been forced to undergo medical treatment; incur medical expense; suffer

disfigurement, disability, mental anguish, and pain; and suffer loss of enjoyment of life.  These injuries

sustained by plaintiff-decedent, **DOROTHY OSBORNE** was preventable with adequate care,

nourishment, attention, and hydration.

71.     Defendant's responsibilities and obligations to Plaintiffs are non- delegable, and thus

Defendant have direct and/or vicarious liability for violations, deprivations, and infringements of

such responsibilities and obligations by any person or entity under Defendant's control, direct or

indirect, including their employees, agents, consultants, and independent contractors, whether in-

house or outside entities, individuals, agencies, or pools, or caused by Defendant' policies, whether written or unwritten, or its common practices.

72.     All acts, and omissions, committed by employees and agents of Defendant were pervasive, omnipresent events that occurred, and continued, throughout plaintiff-decedent, **DOROTHY OSBORNE**'s residency at the Facility, and were such that supervisors, administrators, and managing agents of Defendant knew, or should have been aware, of them.

73.     Pursuant to PHL § 2801-d(2), Plaintiffs seek compensatory damages in an amount sufficient to compensate each Patient for their injury, but in no event less than twenty-five percent of the daily per-patient rate of payment established for the Facility under PHL § 2807, or, in the event the Facility does not have an established rate, the average daily total charges per patient for the Facility, for each day that such injury existed.

74.     In addition to damages suffered by Plaintiffs and as the result of Defendant's deprivation of Plaintiffs' rights as nursing home residents, justice requires that Plaintiffs be entitled to recover attorney's fees pursuant to PHL § 2801-d(6), and punitive damages pursuant to PHL § 2801-d(2), and costs.

## <u>AS AND FOR A SECOND CAUSE OF ACTION</u> <u>FOR WRONGFUL DEATH</u>

75.     That at all times hereinafter mentioned, Plaintiffs repeat, reiterate and reallege each and every allegation contained in the paragraphs of this Complaint herein, as though more fully set forth herein at length.

76.     That by reason of the foregoing, Plaintiff-decedent, **DOROTHY OSBORNE**, sustained severe bodily injury resulting in wrongful death.

77.     That as a result of the foregoing, Plaintiff-decedent, **DOROTHY OSBORNE**, left surviving next of kin and distributees.

pg. 23

Case 1:22-cv-07664-VSB   Document 1-1   Filed 09/08/22   Page 25 of 29

78.     That as a result of the foregoing, Plaintiff-decedent, **DOROTHY OSBORNE**'s estate, became liable for and expended money for funeral and other expenses.

79.     That as a result of the foregoing, Plaintiff-decedent, **DOROTHY OSBORNE**'s estate, suffered pecuniary damages.

80.     That as a result of the foregoing, Plaintiff-decedent, **DOROTHY OSBORNE**'s estate, sustained all other damages allowed by law, including loss of guidance, companionship and love.

81.     That as a result of the foregoing, Plaintiff-decedent, **DOROTHY OSBORNE**'s distributees, have been damaged by Defendants in a sum which exceeds the jurisdictional limits of all lower Courts.

## AS AND FOR A THIRD CAUSE OF ACTION FOR GROSS NEGLIGENCE

82.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "82" of this complaint herein with the same force and effect as if more fully set forth herein at length.

83.     Prior to and at all times hereinafter mentioned, Defendant acted in so careless a manner as to show complete disregard for the rights and safety of plaintiff-decedent.

84.     Prior to and at all times hereinafter mentioned, Defendant acted and/or failed to act knowing that their conduct would result in injury or damage, including knowing that their conduct would probably result in injury or damage to plaintiff-decedent.

85.     Prior to and at all times hereinafter mentioned, Defendant acted in so reckless a manner or failed to act in circumstances where an act was clearly required, so as to indicate disregard of the consequences of their actions or inactions.

86.     Prior to and at all times hereinafter mentioned, Defendant acted in so reckless a manner or failed to act in circumstances where an omission was clearly required, so as to indicate disregard of the consequences of their actions or inactions.

87.     Prior to and at all times hereinafter mentioned, Defendant's conduct, as outlined, hereinabove, was grossly negligent and reckless disregard of plaintiff-decedent safety.

88.     Prior to and at all times hereinafter mentioned, Defendant's conduct, as outlined hereinabove, was willful.

89.     Prior to and at all times hereinafter mentioned, the actions of Defendant were willful and wanton acts, in total disregard of the plaintiff-decedent's well-being and/or committed with actual malice, thereby constituting gross negligence and/or thereby constituting willful and wanton acts.

90.     As a result of the foregoing, plaintiff is entitled to punitive damages pursuant to Public Health Law Section 2801-d(2) and common law and costs.

91.     Solely as a result of the foregoing, Plaintiff has been damaged in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of the matter.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, respectfully request that the Court grant relief against Defendant as follows:

- a. On the First Cause of Action for violation of PHL § 2801-d, damages in an amount to be determined at trial and punitive damages, together with costs, disbursements, and attorney's fees in this action; and
- b. On the Second Cause of Action for Wrongful Death for all recoverable wrongful death damages under the law; and
- c. On the Third Cause of Action for Gross negligence, damages for conscious pain and suffering and punitive damages; and
- d. For such other and further relief as the Court may deem just and proper.

pg. 25

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury as to all issues triable of right.

Dated: Uniondale, New York
May 26, 2022

**DUFFY & DUFFY, PLLC**
*Attorneys for Plaintiff*
1370 RXR Plaza
Uniondale, New York 11556

BY: _____
MICHAEL E. DUFFY, ESQ.

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK      )
                           : ss :
COUNTY OF NASSAU      )

        MICHAEL E. DUFFY, an attorney admitted to practice in the courts of the State of New York states:

        I am a member of **DUFFY & DUFFY, PLLC,** attorneys for the plaintiff in the within action; I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

        The reason this verification is made by me and not by the plaintiff is that the plaintiff resides outside of the county where your deponent maintains his office for the practice of law.

        The grounds of my belief as to all matters not stated upon my own knowledge are as follows: correspondence and conversations with my clients and a review of the file maintained by my office in this matter.

        I affirm that the foregoing statements are true under the penalty of perjury.

Dated:   Uniondale, NY
        May 26, 2022

                                  _____
                                    MICHAEL E. DUFFY

Index No.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

VALERIE HALSEY As Proposed Administratrix of the Estate of DOROTHY OSBORNE, deceased

Plaintiff(s),

-against-

THROGS NECK OPERATING, LLC d/b/a THROGS NECK REHABILITATION & NURSING CENTER

Defendant(s).

SUMMONS AND COMPLAINT

**DUFFY & DUFFY, PLLC**
*Attorneys for Plaintiff(s)*
**1370 RXR PLAZA**
**UNIONDALE, NY 11556**
**516-394-4200**
**516-394-4229**

To:  All Counsel
Attorney(s) for Defendants

Service of a copy of the within                    is hereby admitted.

Dated:

................................
Attorney(s) for